SIMPSON *v.* WATKINS *et al.*

(Division B. Feb. 5, 1932.)

[139 So. 400. No. 29794.]

Green, Green & Jackson, of Jackson, for appellant.

Alexander & Alexander, of Jackson, for appellees.

**Griffith, J.**, delivered the opinion of the court.

This case involves a further construction of the will of W. H. Tribbette, who died on November 13, 1897.

The will is set out in full in the official report of the case, Simpson v. Millsaps, 80 Miss. 239, 31 So. 912, 925, and of it the court said in that case that it "is somewhat remarkable as a testamentary instrument in modern times." There can hardly be any difference of opinion, however, that primarily it is an educational will, and that its most important purpose was for the education of the present and future generations of those within its terms and throughout the long period of years within which it is to operate.

The two provisions of the will that are here particularly involved are: First, the concluding provision of item 3, which in dealing with the distribution of the annual income provides as follows: "To each person embraced in said Class No. 1 and Class No. 2 who is, at the time of each annual distribution, over the age of five years and under the age of twenty-one years, and who shall have attended school within the year of such annual distribution, the cost of his or her tuition, textbooks, and board while attending school until such person shall reach the age of twenty-one years." And, second, the further provision of said item dealing with the residue after paying the educational expenses aforementioned, which further provision reads as follows: "But each of those who are under the age of twenty-one years shall, upon reaching that age, and if living at the time of the annual distribution to be paid out of the income for that year, before the per capita distribution for that year is made, one-half of the whole amount paid by my trustees for his or her tuition, textbooks and board while attending school during his or her minority, which shall be in addition to his or her per capita share of such income."

It will be seen from the two quoted provisions that the testator provided the means for the education of all those within his bounty and provided as an inducement to those who would take advantage of the said means of an education, the further bounty of a distribution to

them, after attaining majority, of one-half the cost of said education, so far as said cost had theretofore been paid under the will. The corpus of said estate amounts to approximately four hundred thousand dollars, the income available for distribution for the year ending March 31, 1931, after paying all the expenses of administration was fourteen thousand one hundred fifty-one dollars and twenty-three cents. The number of the educable beneficiaries, and who were availing of the benefits by regularly attending school during that year, was approximately fifty, for whom there was expended during that year by the trustees for education the aggregate sum of ten thousand four hundred fifteen dollars and twenty-nine cents.

The facts which have given rise to the present proceeding are as follows: Eugene H. Simpson, Jr., who is one of the number entitled to share in the educational distribution under said will, is a boy about fourteen years of age and resides with his parents in Jackson, Mississippi. In this city there is a fine system of public schools, among the best in the state. The said child had formerly been attending the said public schools, but because of what is asserted by his father to have been the want of individual attention to the child in the public school, the quality of the work accomplished by the child was not satisfactory; so that beginning on September 8, 1930, and ending December 19, 1930, the child was sent by his father to Baylor School, a military institution, where it is said that by virtue of a more rigorous discipline and of more effective concentration of attention upon individual students, better results can be attained than in a public school. There was expended at said Baylor School for said child, during said four months, approximately four hundred dollars, and during the remainder of the scholastic year, after the child was brought back home, an additional sum of approximately two hundred twenty dollars was expended, the

larger part of which was for certain special instruction outside of that furnished by the public schools of the city of Jackson. There was presented to the trustees under the will for the educational expenses of said child for the year a bill in the sum of five hundred twenty dollars and nine cents. The trustees allowed and paid three hundred dollars, and thereupon the child by his father and next friend filed his petition in the chancery court praying an order on the trustees for the payment of the balance of said expenses.

All agree that the intention of the testator is the polar star for inquiry in the interpretation of his will; that such intention must be collected from the words which he has employed; and that the question is not what he wished but what he said. Appellant argues, therefore, that since the only specific words which were used in the will in respect to the annual cost or expense of attending school are simply that the particular beneficiary shall be paid "the cost of his or her tuition, textbooks and board while attending school," then when a beneficiary has attended school and has presented the itemized statement of said costs, the trustees have no discretion but to pay, so long as the expenditures were actually made and in good faith. Or if mistaken in that broad contention, appellant argues that in a case like this, where a beneficiary is not taking full advantage of the immediately available and adequate school facilities at home, but in order that he shall become educated it is necessary or proper to send the beneficiary away to a special and more expensive school, then the trustees must pay the expenses however high they may be, so long as good faith existed in the premises; in short, that the trustees are without discretion in these matters.

The chancellor declined to assent to either of the foregoing contentions of appellant, and we are of opinion that the chancellor was correct. It is true that in arriving at the intention of the testator we are bound by

the words which he has employed; but the true meaning of that expression is that we must look to the whole will and to all the words used therein—to the complete purpose and plan of the entire document. As we have said, this will is primarily an educational will. "Education" in its true sense means much more than the acquisition of knowledge out of the pages of textbooks. A testator having such a breadth of vision as this testator has evidenced by his will could scarcely have failed to have in mind that a true education includes the inculcation of the precepts of a respectable economy and a just regard for the rights and interests of others. In view of all the terms of this will, to sustain the contentions of appellant, or either of those contentions, would cast both the two vital considerations, which we have just mentioned, entirely out of the equation.

If the child here involved is to have the privilege, at the entire expense of the estate, to go away from his home at the early age of fourteen; turn aside from the immediate facilities of a fine public school at home, and incur a cost in so doing of one hundred dollars per month or about nine hundred dollars per year, then every one of the other beneficiaries is entitled to the same privilege. And since there are now approximately fifty persons under twenty-one years of age who are being schooled by this estate, it can at once be seen that if all should do as this particular child insists he may do, the aggregate of the costs would far exceed the available income. Again, if this particular child may do as he insists upon the right to do, he would at the same rate as was his expenses at said Baylor School, run up a total cost of his education by the time he is twenty-one to a sum of about seven thousand dollars, upon which, after twenty-one, he would draw, under the second of the above-quoted provisions of the will an allowance out of the residue of three thousand five hundred dollars, or such proportionate part thereof as would be available;

while the child who has availed of the adequate education facilities at home, until ready for college, would receive just that much less out of the distributions after attaining the age of twenty-one years.

Without further length of elaboration, we will quote and adopt the resume of the question at issue as made by the chancellor in his decree, which resume is in the following words: "That the trustees are vested with sufficient discretion by necessary implication to administer the trust estate with such reasonable and prudent economy as may be required to accomplish the ultimate object and real intent of the testator, and to this end may adopt reasonable plans, regulations and schedules for the submission and allowance of educational expenses of beneficiaries. That the total amount of three hundred dollars which was allowed for the school expenses of Eugene H. Simpson, Jr., for the year 1930-31 was not unreasonable or arbitrary and is not inconsistent with the duties of the trust, nor the established method of administration by the trustees. The petition therefore is dismissed."

Affirmed.