256 Cal.App.2d 563 (1967)
Estate of DOROTHY O. BEAUCHAMP, Deceased, ANTHONY JAMES VENTURINI, a Minor, etc., et al., Claimants and Appellants,
v.
EDWIN LEVIO VENTURINI, Claimant and Respondent.
Civ. No. 31932. 
California Court of Appeals. Second Dist., Div. Three. 
Nov. 30, 1967.
 Powers, Himrod & Pepys and Walter R. Powers for Claimants and Appellants.
 Donald Kolts for Claimant and Respondent.
 FRAMPTON, J. pro tem. [fn. *]
 The petitioners, Anthony James Venturini, Paul Daniel Venturini, Elizabeth Ann Venturini and Michael John Venturini, minors, are the *564 children of Edwin Levio Venturini, and the grandchildren of the testatrix Dorothy O. Beauchamp, deceased. Edwin Levio Venturini, hereinafter referred to as the respondent, is the son of the deceased. Eugene M. Elson was appointed as guardian ad litem of the minor petitioners as the result of a petition filed by Jean Dye wherein it was alleged that she was the natural mother of the minors who were then residing with her in the City of Cincinnati, State of Ohio; that she and the respondent were divorced and under the decree of divorce custody of the minor children had been awarded to her; the minors have an interest in the estate of the deceased, who is their paternal grandmother and that the interest of the father of said minors, who is the son of the decedent, in said estate is and will be adverse to the interest of the minors therein.
 On October 7, 1966, the minors, through their guardian ad litem, filed their petition to determine heirship, in which they alleged that "Petitioners have an interest in the estate of said decedent by virtue of Paragraph Third of the Last Will and Testament of said decedent, admitted to probate herein and which reads as follows: 'Third: Having in mind my beloved grand-child I hereby give, devise and bequeath unto my beloved son, Edwin Levio Venturini, all my property of every kind and description and wherever situated, it being my intention hereunder to leave to my beloved son my entire estate and to make him the residuary legatee hereunder. I have discussed with my son and he fully understands that it is my wishes that he keep and retain my entire estate intact and use the same for the education of any children that he may have. In the event my son aforementioned predeceased me, or dies before distribution of my estate I hereby give, devise and bequeath to his issue my entire estate aforementioned.'"
 "That it is the contention of petitioners that decedent intended to and did create a trust of her estate for the benefit of petitioners and for the purpose of their education, and that said estate should be used solely for the education of each of petitioners until such objective has been achieved." The respondent filed his claim of interest in the estate, and upon the trial, the court rendered judgment directing that petitioners take nothing by reason of their petition, "That decedent did not intend to and did not create a trust in any part of her estate and under her last will and testament for the benefit of petitioners for the purpose of their education or for any other purpose, and that no trust was imposed on the *565 estate by said decedent's last will and testament." The appeal is from the judgment.
 The will was drawn by Chauncey G. Kolts, an attorney at law, and by its terms appointed the respondent to act as executor, or if he should not be eligible to act, or should fail, refuse or become incapacitated to act, then Chauncey G. Kolts was appointed to act as such executor. The will also contained the request that the executor employ as his attorney "my friend," Chauncey G. Kolts or the firm of Kolts and Kolts. The will was subscribed on November 19, 1950. According to the petition for the appointment of a guardian ad litem, Anthony James Venturini was born on June 22, 1948; Paul Daniel Venturini was born on December 31, 1950; Elizabeth Ann Venturini was born on June 8, 1952, and Michael John Venturini was born on December 20, 1953.
 Chauncey G. Kolts qualified and was appointed as executor under the will. Donald Kolts, his brother and a member of the firm of Kolts and Kolts, is the attorney for both the executor and the respondent.
 The testimony adduced at the trial discloses that the testatrix had been a client of Chauncey G. Kolts since 1928, and that she consulted him concerning the preparation of her will. Chauncey G. Kolts testified that "She told me she wanted to make a will. She told me that she had one son, which I well knew since I knew him since he was a young boy. She said she had one grandchild. She said she wanted to leave everything she had to her son, but she would like to provide for the education of her grandchild. I told her that, in my opinion, the proper way to do that would be to create a testamentary trust in which she would name someone as trustee who would have certain powers and duties and be paid a compensation for acting as a trustee; that the time ... amounts that were to be expended for education should be set out and labeled in the trust; that the length and duration of the trust should be set, and any other pertinent facts that might go into the trust. She said, no, she didn't want to do that because she felt it would tie her property up. She said she wanted to leave it to her son outright; that he was a good father and she had discussed it with him and she knew he would see that his child was properly educated." That portion of the testimony relating to the desire and intent of the testatrix was stricken from the record and the balance of the testimony was allowed to remain for the limited purpose of showing that she understood the term trust. The evidence *566 disclosed that the testatrix did not dictate the language of the will, but the words used were those of Chauncey G. Kolts. He did not explain to the testatrix what the term "residuary legatee" meant, and she did not ask him what it meant. One of the interrogatories propounded to the respondent states: "Did you and the Deceased discuss her wishes in regard to your retaining her entire estate intact and use the same for the education of any children that you may have[?]" The respondent's answer to this interrogatory was "No. At the time the Will was executed I was in the Armed Forces of the United States and I did not know that my Mother executed a Will until after her death."
 Paragraph First of the will reads: "I direct my Executor, hereinafter named to pay my just debts, last illness and funeral expenses as soon after my demise as may be practicable from any funds available in my estate." Paragraph Second of the will reads: "I declare that I am a widow and that I have one child, Edwin Levio Venturini, who is presently in the armed forces of the United States. I further declare that I have one grand-child, who is the issue of my beloved son."paragraph Third of the will is as hereinabove set forth in the petition to determine heirship.
 [1a] The sole issue presented is whether the will created a trust or equitable charge against the respondent legatee for the benefit of his minor children. The primary contentions of the petitioners are that "1. The Will, having been drawn by an attorney, the technical meaning of the words used therein will be applied. 2. That although no formal trust was created, the Will shows an intention to create a trust or equitable charge against the devisee. 3. Where extrinsic evidence as to the intention of the Testatrix is not conflicting, the Appellate Court is not bound by the findings of the trial court. 4. The interpretation of a Will is a matter of law and the Appellate Court is not bound by the interpretation of the trial court."
 The terms of the will here under consideration are substantially similar to the terms of the will in the case of Estate of Collias, 37 Cal.2d 587 [233 P.2d 554]. The facts in Collias are set forth in the opinion of the court as follows (p. 588): "Chris Collias died testate. His will named his nephew Argirios Collias as executor and included the following provision:"
 " 'All the rest and residue of my estate, of every kind and description, and wherever situated, I give, devise and bequeath unto my nephew Argirios Collias a resident of Long *567 Beach, California at the time this instrument is signed. It is my desire and wish that my nephew Argirios Collias will give half of my estate to my nearest relative heir in Greece instructing him or her to distribute said half of my estate in equal shares to all my close relatives in Greece. In the event that my said nephew Argirios Collias shall predecease me, then said estate shall go and it is hereby bequeathed to my nearest relative in Greece to be distributed as above among the other relatives.' "
 The trial court in Collias distributed all of the estate, after the payment of debts and expenses, to Collias without qualification. On appeal, the nephews and nieces of the decedent urged that the decree erroneously vested absolute title in Collias, and that the proper construction of the will is that one-half of the estate is left to Collias in trust for the use and benefit of the nearest or close relatives of the decedent in Greece. The Supreme Court in disposing of this contention said: "To impose a trust upon property bequeathed and devised to Collias, it must appear that the testator intended to impose mandatory duties upon him. [Citation.] Otherwise stated, where an absolute estate has been conveyed by a will, that estate will not be limited by subsequent words unless they indicate as clear an intention therefor as was shown by the words creating the estate. [Citation.] Thus it is provided in section 104 of the Probate Code that 'A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will.'"
 "It is clear that the sentence 'All the rest and residue of my estate ... I give, devise and bequeath unto my nephew. ...' standing alone, would bequeath the property to Argirios absolutely. The only question presented for decision is whether by the sentence following the words: 'It is my desire and wish ...' the testator intended to impose a legally enforceable duty or a mere moral obligation."
 " ' "Prima facie, a mere request, or an expression of hope or confidence or expectation, does not import a command." ... According to the ordinary use of the English language, the word, "desire" does not import a trust or charge. ...' (Estate of Marti, 132 Cal. 666, 671 [61 P. 964, 64 P. 1071].) Thus it was said (p. 672) that 'Words which merely raise a doubt or suggest an inference will not affect the estate thus *568 conveyed, and any doubt which may be suggested by reason of such subsequent words must be resolved in favor of the estate first conveyed.' (See also, Estate of Kearns, 36 Cal.2d 531 [225 P.2d 218].)"
 "As a guide to the determination of the intent of the testator, the courts have stated certain general principles. Thus in Estate of Lawrence, 17 Cal.2d 1, 7 [108 P.2d 893], it was said that '... when words of recommendation, request and the like are used in direct reference to the estate, they are prima facie testamentary and imperative, and not precatory. While the desire of a testator for the disposal of his estate is a mere request when addressed to his devisee, it is to be construed as a command when addressed to his executor.' And again in Estate of Miles, 72 Cal.App.2d 336, 343 [164 P.2d 546], it was said: [2] 'A wish or request of the testator for the disposition of his estate directed to the executor is a command, but if addressed to the legatee it will not be construed as a limitation on the estate given in absolute terms. (Estate of Marti, 132 Cal. 666, 671 [61 P. 964, 64 P. 1071].)' To the same effect is Estate of Tooley, 170 Cal. 164 [149 P. 574, Ann.Cas. 1917B 516]."
 "The appellants point out that Argirios Collias was appointed executor of the estate, and therefore contend that the words 'wish and desire' should be treated as mandatory rather than precatory. However, he is also the sole devisee, and the wish and desire is addressed to him as the testator's nephew. 'Where the person directed to carry out the wishes of the testator is both executor and legatee, the courts in construing the effect of the language have refused to follow the strict rule which imposes a mandatory duty on the executor and have apparently treated the words as being addressed to him in his capacity as legatee.' (Estate of Kearns, 36 Cal.2d 531, 534-535 [225 P.2d 218].)"
 "Applying these rules of construction, it is clear that no trust was created by the will. By the first sentence, the entire estate is bequeathed outright and unconditionally to the nephew. The desire and wish which follow are directed to the devisee and not to the executor. [Citation.] In the event Argirios Collias should have predeceased his uncle, by language used in direct reference to the estate, the testator made an alternative disposition of his property. It is apparent from these provisions that the testator's 'desire and wish' concerning his relative in Greece is 'not equally clear and distinct' as the provision preceding it. Accordingly, applying the rule *569 stated in section 104 of the Probate Code, and resolving any doubt suggested by the subsequent words in favor of the estate first conveyed [citation], it cannot be said that a trust or equitable charge was created which limits the absolute bequest of the entire estate to Argirios Collias." (Pp. 589-590.)
 [1b] We are of the opinion that the language used in the first sentence in paragraph third of the will herein under consideration, that is as follows, "Having in mind my beloved grand-child I hereby give, devise and bequeath unto my beloved son, Edwin Levio Venturini, all my property of every kind and description and wherever situated, it being my intention hereunder to leave to my beloved son my entire estate and to make him the residuary legate hereunder," when considered with paragraphs first and second of the will, vested absolute title to the property of which the testatrix was possessed at the time of death in her son subject to the payment of her just debts, the expenses of her last illness and her funeral expenses. We are further of the opinion that the language contained in the second sentence of paragraph third of the will is precatory in nature and is insufficient to impose a trust upon the estate in favor of the respondent's minor children. (Estate of Sargavak, 41 Cal.2d 314, 319 [259 P.2d 897].)
 The judgment is affirmed.
 Ford, P. J., and Cobey, J., concurred.
NOTES
[fn. *] *. Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.